1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE MARTINEZ JR., | Case No. 1:24-CV-00527-JLT-EPG (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS THAT THIS ACTION PROCEED ON PLAINTIFF'S CLAIMS OF DELIBERATE INDIFFERENCE AND RETALIATION AGAINST DEFENDANTS VILLANUEVA, ALEJANDRA GRANADOS, MEDINA, DR. GUSTAVIAN, DEBBIE, AND A RETALIATION CLAIM AGAINST ALEJANDRA GRANADOS, SERGEANT RIVERA, AND CAPTAIN GIL AND THAT ALL OTHER CLAIMS BE DISMISSED |
| v. | |
| TYSON POGUE, *et al.*, | |
| Defendants. | |
| | (ECF No. 11) |
| | OBJECTIONS, IF ANY, DUE WITHIN 30 DAYS |

When the claim underlying this action arose, Plaintiff Joe Martinez Jr. was a pretrial detainee confined in Madera County Jail. He now proceeds *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff alleges that he suffered an injury when he slipped and fell on a wet floor. Plaintiff's amended complaint (ECF No. 11) is before the Court for screening.

For the reasons described below, the Court will recommend that this action proceed on Plaintiff's deliberate indifference to serious medical needs and retaliation claims against Defendants Villanueva, Alejandra Granados, Medina, Dr. Gustavian, Debbie, and on his retaliation claim against Defendant Alejandra Granados, Sergeant Rivera, and Captain Gil.

The Court will recommend that all other claims be dismissed.

1

Plaintiff has thirty days from the date of these findings and recommendations to file his objections.

## I.      SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 7), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. *Id*. at 678.

In determining whether a complaint states an actionable claim, the Court must accept the allegations in the complaint as true, *Hospital Bldg. Co. v. Trs. of Rex Hospital*, 425 U.S. 738, 740 (1976), construe *pro se* pleadings liberally in the light most favorable to the plaintiff, *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000), and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627

F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II.     SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

In his First Amended Complaint (ECF No. 11), Plaintiff names the following Defendants: County of Madera, a municipal corporation; Tyson Pogue, Sheriff of Madera County; Wellpath, contracted medical provider; Medina, Dr. Gustavian, and Debbie, Wellpath medical administrators at Madera County Sheriff's Office; Sergeants Khalea, Villanueva, and Rivera, watch commanders at Madera County Sheriff's Office; Alejandra Granados, Medical staff at Madera County Sheriff's Office; Corporals Alva and Gil,[1] watch commanders at Madera County Sheriff's Office; Correctional Officers Lawrence, Cortez, Benning, and Martinez at Madera County Sheriff's Office. (ECF No. 11 at 3).

Plaintiff then alleges that he is a pretrial detainee. (ECF No. 11 at 3). For years since the institution was opened, inmates and staff have been slipping and falling in front of the showers throughout the jail as a result of administrators and supervisory authorities knowingly refusing to take reasonable measures to protect inmates under their custody and employees, which clearly establish subjective knowledge of a high degree of risk or serious injury. (*Id.*)

Plaintiff states that on February 8, 2024, he slipped and fell outside of the shower, hitting his head on the concrete floor knocking him unconscious and causing him to suffer an epileptic seizure. (ECF No. 11 at 3). While Plaintiff was unconscious, Defendant Alva, not knowing the extent of Plaintiff's injuries, dragged Plaintiff by his arms away from the front of the shower. (*Id.* at 3–4). As plaintiff was regaining consciousness, he could hear Defendant Alva complaining to correctional officer Dominguez about how he and Defendant Sgt. Khalea had to deal with the same incident a day prior, in the same spot, about which they both had to write reports to administration. (*Id.* at 4). This establishes supervisors knew and their failures were the moving force resulting in Plaintiff's injury from failure to protect. While waiting for an ambulance to come, Defendant Alva continued to comment about how long inmates and

---

[1] Plaintiff uses both "Gil" and "Gill" throughout his complaint. The Court assumes that both spellings refer to the same person.

staff have been slipping and falling in the front of the showers throughout the institution and administrator Captain Rodriguez refuses to implement protective measures to prevent these injuries described here. (*Id.*)

Plaintiff was transferred to the hospital, where he was treated by medical doctors, who ran CAT scans and prescribed medications. Plaintiff states that throughout the treatment the doctors criticized Defendant Alva's training for moving Plaintiff by his arms after he struck his head on the concrete floor, because that could have been fatal. (ECF No. 11 at 4).

On February 9, 2024, Plaintiff was returned to the institution with doctor's orders to provide Plaintiff with a wheelchair or walker to help his mobility and to prevent him from falling after hitting his head and suffering an epileptic seizure. (ECF No. 11 at 4). In addition, the doctors prescribed Plaintiff a lidocaine patch for pain in his lower back and to expedite recovery. (*Id.*)

Plaintiff states that he was overheard by Defendant Sergeant Villanueva mentioning filing a civil action against the institution and its supervisory deputies involved in handling his situation. (ECF No. 11 at 4–5). Defendant Villanueva immediately retaliated against Plaintiff when he ordered Defendant Alejandra to strip Plaintiff of his prescribed patch for pain and to disregard any doctor's orders to provide Plaintiff with a wheelchair or walker, so Plaintiff could realize that the people he was planning to sue were in charge. Plaintiff states that his assessment turned extremely hostile as Defendant Alejandra ripped Plaintiff's pain patch off and knowingly denied doctor's orders to provide a wheelchair or walker in deliberate indifference to Plaintiff's serious medical needs. (*Id.* at 5).

On February 10, 2024, Plaintiff's mobility was "clearly evident to being extremely painful" and he requested to see or speak with medical, "which after call, was disregarded by Defendants Medina, Dr. Gustavian, and also Debbie." (*Id.*) During the call, medical administrators acknowledged the doctor's orders, but reported that it was not mandatory per policy of defendants Wellpath, Madera County, and also Chief Tyson Pogue. Plaintiff states that he was threatened by defendants Medina, Dr. Gustavian, and Debbie, that "if he continued to complain he would be written up by deputies or he would be moved to the institution

infirmary where there is no TV and he would be alone, denying plaintiff any assistance, forcing him to suffer." (*Id.*)

On February 11, 2024, there was a back up call where module officer Shields rushed inmates to lockdown. (ECF No. 11 at 5). Plaintiff, suffering from the pain, got to his cell and immediately collapsed. (*Id.* at 5–6). His cellmate helped him up and into bed. Approximately four hours later, Plaintiff got up to go to the restroom and again collapsed, hitting his head, and causing another seizure. Plaintiff's cellmate called for help and the module officer called medical personnel and watch commanders to the module. Plaintiff states that as he regained consciousness, standing around him were medical staff Defendant Alejandra and Defendants Sergeant Rivera, Captain Gil, as well as correctional officers Lawrence, Cortez, Benning, and Martinez. (*Id.* at 6). Plaintiff states that as he pleaded with the Defendants about the pain he was enduring, he could hear Defendant Alejandra telling Deputies Defendant Sergeant Rivera and Captain Gil that Plaintiff was faking and about his intentions to sue the institution and deputies involved. Plaintiff, believing Defendants were not going to provide him with the adequate assistance, asked Defendants to leave him on the floor if they were not going to call an ambulance. Defendants Sergeant Rivera and Captain Gil disregarded Plaintiff's request to leave him on the floor and had Defendants Lawrence, Martinez, Benning, and Cortez pick Plaintiff up and put him in the bed. In doing so, they disregarded that Plaintiff hit his head, which could be fatal, and he suffered from his pain in deliberate indifference to his serious medical needs, retaliation, and failure to protect. (*Id.* at 6).

Plaintiff states that Defendant Alejandra sarcastically advised him that he would be seen by medical administrators Defendants Medina, Doctor Gustavian, or Debbie the following morning and left him in pain. Plaintiff states that about one hour later he fell out of his bed again, suffering another epileptic seizure and knot to his forehead. (ECF No. 11 at 6–7).

Plaintiff states that he is experiencing blurred vision, severe headaches, and hindered mobility. (*Id.* at 7). He has filed countless sick calls to medical to report his pain. They have been thrown away in retaliation for his intent to sue and for filing an inmate grievance against medical administrators, which initiated this action for failure to protect, denial of medical

assistance, and deliberate indifference to his serious medical needs, subjecting him to suffering. There are daily reports by correctional officers throughout the institution, which are read by Madera County Jail, Chief, and administrators, who knew of every slip and fall, and failed to fix the evident risk of harm or to prevent injury which is the moving force behind Plaintiff's injury. (*Id.*) This treatment of objectively cruel condition subjected by policy of Defendants Wellpath and Madera County, who wrongfully refused its contracted legal responsibility to the State of California to treat or seek treatment of medical needs that resulted in denying Plaintiff assistance showing a deliberate indifference to his health and safety. (*Id.*)

Plaintiff states that all listed defendants were acting under the color of state law when they knowingly and intentionally violated their individual oaths and duties and abused their authority. (ECF No. 11 at 7–8).

Plaintiff states that the injuries, pain, and suffering he was subjected to while incarcerated in Madera County Jail under the authority of Defendant Tyson Pogue and the medical malpractice enforced by Defendants Medina, Dr. Gustavian, and Debbie is designed through an agreed upon policy of Defendants Wellpath and Madera County. (*Id.* at 8.)

Plaintiff states that Defendants Madera County, a municipal corporation and public entity, and Wellpath, a private corporation that provides medical care to Madera County Jail, both have the authority as employers of the watch commanders and the medical administrators. (ECF No. 11 at 8). Defendants and the unspoken customs relied on by Defendants are the responsibility of Madera County and Wellpath.

Plaintiff states that when complaints are filed against medical administrators, staff, and deputies, Madera County and Wellpath would defend them of their wrongdoing, which constitutes conspiracy to deny assistance by failing to protect. (*Id.* at 8). Plaintiff will be able to prove through discovery that the designed inactions are not only known by the Defendant Madera County but in fact enforced, allowing Wellpath's medical mistreatment of jail prisoners. This is a strong moving force that gives Defendants the authority to refuse protection and deny medical assistance as required under the state and federal law and keep performing

duties in a "business as usual" manner. That custom/policy is the moving force to the constitutional deficiencies claimed herein.

Plaintiff further alleges that this claim is one of many the prisoners have filed on the grounds of denial of medical care, failure to protect, and retaliation in Madera County Jail, due to the ongoing abuse in the jail, establishing this conduct is not an isolated incident. (ECF No. 11 at 9). Wellpath, who is contracted with Madera County, has a long history of abusing prisoners with medical mistreatment that spans decades.

Plaintiff states the Defendant Chief Tyson Pogue, who is briefed daily of all slips and falls and injuries throughout the institution, knowingly failed in his legal responsibility to take reasonable measures to prevent Plaintiff from risk or injury. (*Id.* at 9). Plaintiff states that Pogue failed to encourage proper correctional methods after countless civil rights complaints were filed under his authority and his inactions "establish him knowingly an environment which led to Plaintiff enduing physical harm, stressful conditions, and being denied his constitutional right to be free from discrimination, neglect, and provided with basic human rights." (ECF No. 11 at 10–11).

The culture established under the authority of Madera County Department of Corrections is clearly enforced in Defendant Pogue's jail. The training officers receive, lack of supervision, and encouraged illegal conduct by officers all fall on the responsibility of Defendant Chief Tyson Pogue. M.C.D.C. has a history of abusing its authority and medical malpractice to his prisoners, and Pogue has not implemented policies to further protect prisoners under his custody from the described treatment. (*Id.* at 11).

Plaintiff states that supervisory liability exists in this action against Defendants Wellpath, Dr. Gustavian, Medina, Debbie, Madera County, Chief Pogue, Sergeant Khalea, Sergeant Villanueva, Sergeant Rivera, Captain Alva, and Captain Gill for their personal participation and Wellpath and Madera County and Chief Tyson Pogue for implementing policy so deficient that itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation. (*Id.* at 11–12). The inaction by Chief Tyson Pogue encourages the cultures of officers and medical administrators abusing their authority and Plaintiff's right

was so prevalent and that Plaintiff was injured with a severe condition he has to live with, pain he is forced to endure, denied assistance, and retaliated against for trying to exercise constitutional protections. (*Id.* at 12).

Plaintiff further alleges that Chief Tyson Pogue failed to comply with procedural requirements of state Administrative Procedure Act. (*Id.* at 12).

Plaintiff is also asking that the Court exercise supplemental jurisdiction for state law claims based on the same allegations for violations of "Madera County Sheriff Office Jail Division Rules/Regulations, California Penal Code Sections, California Civil Codes, and State and Federal constitutional amendments."

Plaintiff seeks monetary damages and any further relief the court deems just and equitable, as well as a jury trial. (ECF No. 11 at 13).

### III.   LEGAL STANDARD FOR SECTION 1983 ACTIONS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing

"under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

## IV.   ANALYSIS OF PLAINTIFF'S CLAIMS

Because Plaintiff appears to have been a pretrial detainee at the time of the incident, the Court analyzes his claim under the Fourteenth Amendment. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).

### A.   Conditions of Confinement and Deliberate Indifference to Serious Medical Needs

To state a conditions of confinement claim and a claim for deliberate indifference to serious medical needs, a pretrial detainee must establish that the defendant was "objectively indifferent" to his wellbeing by showing that:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'" [*Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016)] (quoting [*Kingsley v. Hendrickson*, 576 U.S.

9

389, 397 (2015)]; *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Id.* (quoting [*Daniels v. Williams*, 474 U.S. 327, 330–31 (1986)). Thus, the plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*

*Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018) (parallel citations and footnote omitted).

### 1. Slip and Fall

Plaintiff alleged a violation of conditions of confinement based on Plaintiff slipping and falling in the shower area. Plaintiff alleges that he slipped and fell outside the shower and that he overheard correctional officers—Alva, Dominguez, and Khalea—stating that other inmates had slipped and fallen in the same spot, that "Captain Rodriguez refuses to implement protective measures to prevent these injuries described here." (ECF No. 11 at 3–4).

Courts have held that allegations of slip-and-fall generally do not state a constitutional claim, rather than a claim for negligence. *Daniels v. Williams*, 474 U.S. 327, 336 (1986) ("Petitioner alleges that he was injured by the negligence of respondent, a custodial official at the city jail. Whatever other provisions of state law or general jurisprudence he may rightly invoke, the Fourteenth Amendment to the United States Constitution does not afford him a remedy."); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986) ("[T]he protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."); *Aaronian v. Fresno Cnty. Jail,* No. 1:10-CV-00518 JLT PC, 2010 WL 5232969, at *3 (E.D. Cal. Dec. 16, 2010) (detainee at Fresno County Jail who slipped and fell on a puddle from leaking plumbing in the ceiling failed to state a cognizable constitutional claim); *Julian v. Valley State Prison*, No. 1–23-CV-00013-SAB PC, 2023 WL 3466454, at *3 (E.D. Cal. May 15, 2023), *report and recommendation adopted*, 2023 WL 4353679 (E.D. Cal. July 5, 2023) (plaintiff alleging slip-and-fall injury failed "to state a cognizable claim for relief").

Here, Plaintiff's allegations do not rise to the level of a constitutional claim for deliberate indifference, rather than negligence, and therefore, fail to state a claim. As an initial matter, Plaintiff fails to allege with specificity what any defendant should have done to prevent the slip and fall. Plaintiff alleges that certain administrators failed to implement reasonable or protective measures, but does not specify what these measures would be. Notably, Plaintiff does not allege that there was any particular hazard associated with the shower that posed an unreasonable risk of harm, beyond the general risk of slipping and falling when water is present. Nor does he allege that there was anything especially dangerous about this particular shower.  Indeed, Plaintiff states that all showers in the institution posed a risk of slipping and falling. This omission not only fails to plead the claim with specificity, but also fails to allege deliberate indifference because Plaintiff fails to allege that any defendant was aware of a particular measure that needed to be taken to prevent such a fall. Instead, Plaintiff's allegation appears to allege that some unknown reasonable measures could have been taken to prevent the fall, which is insufficient to state a Fourteenth Amendment constitutional claim for deliberate indifference to Plaintiff's safety.

Additionally, Plaintiff fails to allege facts indicating that any specific defendant acted with deliberate indifference to his safety. Plaintiff fails to allege that any specific defendant was aware of a need for a safety measure and purposefully declined to act to address that harm. Plaintiff does allege that he overheard certain officers saying that "Captain Rodriguez refuses to implement protective measures to prevent these injuries described here," but does not provide any facts indicating who Captain Rodriguez is, what Captain Rodriguez knew, and what Captain Rodriguez could have done to address the safety hazard, if any. Likewise, Plaintiff's allegations against Defendants Alva, Dominguez, and Khalea also fail to state a claim based on slip-and-fall allegations.

### 2.  Dragging Plaintiff by the Arms

Plaintiff also alleges that after Plaintiff fell and was unconscious, Defendant Alva dragged Plaintiff by his arms away from in front of the shower. (ECF No. 11 at 3–4). Plaintiff states that throughout the treatment the doctors criticized Defendant Alva's training for moving

Plaintiff by his arms after him striking his head on the concrete floor, because that could have been fatal. (*Id.*) Plaintiff fails to state a claim against Alva based on these allegations because Plaintiff failed to allege that Alva was aware that he would harm Plaintiff by moving him in that manner.  Indeed, Plaintiff alleges that Alva did this without knowing the extent of Plaintiff's injuries.  Plaintiff does not allege that Alva knew it could harm Plaintiff, or acted with deliberate indifference, rather than negligence, in moving Plaintiff in that way. Additionally, Plaintiff fails to allege that he was actually harmed by being moved in this way.

### 3.   Failure to Follow Doctor's Orders

Next, Plaintiff alleges that he was returned to the institution with doctor's orders to provide Plaintiff with a wheelchair or walker to help his mobility and to prevent him from falling after hitting his head and suffering an epileptic seizure. (ECF No. 11 at 4). In addition, the doctors prescribed Plaintiff a lidocaine patch for pain in his lower back and to expedite recovery. (*Id.*) However, Defendant Villanueva ordered Defendant Alejandra Granados to strip Plaintiff of his prescribed patch for pain and to disregard any doctor's orders to provide Plaintiff with a wheelchair or walker. (*Id.* at 4–5). Further, Defendants Medina, Dr. Gustavian, and Debbie also refused to provide Plaintiff with the pain patch and a wheelchair or walker. (*Id.* at 5).

Interpreting these allegations liberally, Plaintiff states a claim for deliberate indifference to serious medical needs against Defendants Villanueva and Alejandra Granados based on the allegations they removed a doctor's patch for pain and refused to implement doctor's orders to be provided a wheelchair, and against Defendants Medina, Gustavian and Debbie based on the allegations that they disregarded a doctor's orders without cause.

### B.  Retaliation

There are five basic elements to a First Amendment retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted).

While prisoners have no freestanding right to a prison grievance process, *see Ramirez v. Galaza,* 334 F.3d 850, 860 (9th Cir. 2003), "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system," *Bradley v. Hall,* 64 F.3d 1276, 1279 (9th Cir. 1995), *overruled on other grounds by Shaw v. Murphy,* 532 U.S. 223, 230 n.2 (2001). Because filing administrative grievances and initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate against prisoners for engaging in these activities. *Rhodes*, 408 F.3d at 567.

Plaintiff alleges that Defendant Villanueva removed a doctor's patch for pain and refused to implement doctor's orders to be provided a wheelchair specifically after learning that Plaintiff intended to file a civil action against the institution. (ECF No. 11 at 4–5). Plaintiff further alleges that he was threatened by defendants Medina, Dr. Gustavian, and Debbie, that "if he continued to complain he would be written up by deputies or he would be moved to the institution infirmary where there is no TV and he would be alone, denying plaintiff any assistance, forcing him to suffer." (ECF No. 11 at 5). In addition, Plaintiff alleges that he overheard Defendant Alejandra Granados telling Defendants Sergeant Rivera and Captain Gil about his intentions to sue the institution. (*Id.* at 6). Following that, they ordered others to move him into bed, from where he fell out, suffering further injuries and another epileptic seizure. (ECF No. 11 at 6–7).

Construing the facts liberally in favor of Plaintiff, the Court finds that Plaintiff's complaint states a claim for retaliation against Defendants Villanueva, Medina, Dr. Gustavian, Debbie, Alejandra Granados, Sergeant Rivera, and Captain Gil.

### C. Supervisory Liability

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676–77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

13

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. *Iqbal*, 556 U.S. at 676–77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," *Hansen*, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

Plaintiff states the Defendant Chief Tyson Pogue, who Plaintiff alleges is briefed daily of all slips and falls and injuries throughout the institution, knowingly failed in his legal responsibility to take reasonable measures to prevent Plaintiff from risk or injury. (*Id.* at 9). Because the Court found that Plaintiff fails to state a claim based on his slip-and-fall allegations, the Court also finds that Plaintiff fails to state a claim against Defendant Pogue for the same claim based on supervisory liability.

Plaintiff also states that Pogue "failed to encourage proper correctional methods after countless civil rights complaints were filed under his authority" and that "the training officers receive, lack of supervision, and encouraged illegal conduct by officers all fall on the responsibility of Defendant Chief Tyson Pogue." (ECF No. 11 at 10–11). Plaintiff further

alleges that "Defendant Chief Tyson Pogue has full knowledge of the enforced abuse to prisoners who try to exercise constitutional protections and retaliation subjected upon prisoners at the hands of his officers for such acts, thus establishing the causal connection." (*Id.* at 11). These allegations are too conclusory to state a claim. Plaintiff does not identify what training officers did not receive or what training they received that was constitutionally fraught; he does not identify what "proper correctional methods" Pogue "failed to encourage;" or what specific policy Pogue promulgated or implemented that was the moving force of the constitutional violation and does not identify a specific constitutional violation that these actions precipitated.

Finally, Plaintiff alleges that "supervisory liability exists in this action against Defendants Wellpath, Dr. Gustavian, Medina, Debbie, Madera County, Chief Pogue, Sergeant Khalea, Sergeant Villanueva, Sergeant Rivera, Captain Alva, and Captain Gill for their personal participation and Wellpath and Madera County and Chief Tyson Pogue for implementing policy so deficient that itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." (*Id.* at 11–12). Plaintiff fails to state a claim for supervisory liability against all of these Defendants. Plaintiff does not even allege that some of these defendants—e.g., Medina, Debbie, Khalea, Rivera, Gil—were acting in supervisory capacity and fails to allege facts that other defendants knew of the violations and failed to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen*, 885 F.2d at 646.

In sum, Plaintiff's allegations against Defendants based on their supervisory position fail to state constitutional claims against them.

### D. Municipal Liability

"Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690.

"To establish liability, [a Plaintiff] must show that (1) she was deprived of a

constitutional right; (2) the County [(or City)] had a policy; (3) the policy amounted to a deliberate indifference to her constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001) (citation and internal quotation marks omitted).

A plaintiff may establish the existence of a policy by introducing evidence of "a longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (citation and internal quotation marks omitted). "The [practice or] custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city [(or county)] policy.'" *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Monell*, 436 U.S. at 691). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.* "[A] plaintiff can show a custom or practice of violating a written policy." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1075 n.10 (9th Cir. 2016).

Under this theory of liability, Plaintiff sues County of Madera, a municipal corporation, and Wellpath, a contracted medical provider. (ECF No. 11 at 2–3). However, Plaintiff fails to sufficiently allege that either entity had a policy that led to the deprivation of any constitutional right.

In connection with his slip-and-fall claim, Plaintiff states that the lack of care to prevent or protect Plaintiff from injury, risk, or harm falls on the responsibility of Madera County. (ECF No. 11 at 9). Plaintiff alleges that there are daily reports by correctional officers throughout the institution, which are read by Madera County Jail and medical administrators, who knew of every slip and fall. (ECF No. 11 at 7). Plaintiff states that his slip-and-fall was a result of the policy of Defendants Madera County and Wellpath, "who wrongfully refused is contracted legal responsibility to the State of California to treat or seek treatment of medical needs that resulted in denying Plaintiff assistance showing a deliberate indifference to his health and safety." (*Id.*) In addition, Plaintiff alleges that "the injuries, pain, and suffering he

was subjected to while incarcerated in Madera County Jail under the authority of Defendant Tyson Pogue and the medical malpractice enforced by Defendants Medina, Dr. Gustavian, and Debbie is designed through and agreed upon policy of Defendants Wellpath and Madera County." (*Id.* at 8).

Because the Court found that Plaintiff fails to state a claim based on his slip-and-fall allegations, the Court declines to find that some policy of Defendants is the moving force behind his injury. Moreover, in referring to denial of care, these allegations are too conclusory and are not sufficiently connected to any specific request for medical care. They also do not allege existence of a specific policy or a fact indicating that this is part of the policy. These are merely general allegations of failure to attend to medical needs, and therefore, these allegations fail to state a claim.

In addition, Plaintiff alleges that this claim is "one of many the prisoners have filed" on the grounds of denial of medical care, failure to protect, and retaliation in Madera County Jail, and that Wellpath "has a long history of abusing prisoners with medical mistreatment." (ECF No. 11 at 9). Plaintiff states that "medical administrators abuse their authority and responsibilities, and these practices were established by Madera County and Wellpath. When prisoners intend to exercise their constitutional rights to remedy these wrongs, retaliation is than the adverse act." (*Id.*) These allegations are also too conclusory to state a claim; moreover, as a *pro se* litigant, Plaintiff may not pursue claims on behalf of others in a representative capacity. *See, e.g.*, *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664–65 (9th Cir. 2008) (collecting cases and noting that courts routinely prohibit *pro se* plaintiffs "from pursuing claims on behalf of others in a representative capacity"); *Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962) ("A litigant appearing in propria persona has no authority to represent anyone other than himself.").

Finally, Plaintiff states that "when complaints are filed against medical administrators, staff, and deputies, Madera County and Wellpath would defend them of their wrongdoing, which constitutes conspiracy to deny assistance by failing to protect." (*Id.* at 8). Providing legal representation to employees does not amount to a constitutional violation.

Therefore, Plaintiff fails to state any claims against Defendants Madera County or Wellpath.

**E. Equal Protection**

The equal protection clause requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985); *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013); *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008). To state a claim, Plaintiff must show that Defendants intentionally discriminated against him based on his membership in a protected class, *Hartmann*, 707 F.3d at 1123 *Furnace*, 705 F.3d at 1030, *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003), *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166–67 (9th Cir. 2005), *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, *Engquist v. Oregon Department of Agr.*, 553 U.S. 591, 601–02 (2008), *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008), *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff alleges that Defendant Chief Tyson Pogue is liable for Plaintiff's right to be free from retaliation and discrimination because when Plaintiff intended to exercise constitutional rights to raise safety concerns against Chief Tyson Pogue's institution officers, Defendants Khalea, Villanueva, Rivera, Alva, Gill, Medina, Dr. Gustavian, Debbie, Lawrence, Cortez, Benning, Martinez, and Alejandra Granados, each of whom acted with deliberate indifference in denying such rights and further causing suffering. (ECF No. 11 at 10). Plaintiff also alleges that "there was no compelling state interest when the Plaintiff was injured and requested the assistance, and these were not adequately met. Instead, Plaintiff was unwarrantedly retaliated and discriminated against, which presents a constitutionally colorable claim." (*Id.*) These allegations are conclusory and do not meet the pleading standard. *Iqbal*, 556 U.S. at 678. There are no facts alleged suggesting that any defendant intentionally

discriminated against Plaintiff based on his membership in a protected class or that similarly situated individuals were intentionally treated different.

### F. State-law claims

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III [of the Constitution]," with specific exceptions. "Pendent jurisdiction over state claims exists when the federal claim is sufficiently substantial to confer federal jurisdiction, and there is a 'common nucleus of operative fact between the state and federal claims.'" *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995) (quoting *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 421 (9th Cir. 1991)). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . .the state claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).

Plaintiff alleges that "Chief Tyson Pogue failed to comply with procedural requirements of state Administrative Procedure Act." (ECF No. 11 at 12). Plaintiff also alleges asks the Court to exercise supplemental jurisdiction for violations of "Madera County Sheriff Office Jail Division Rules/Regulations, California Penal Code Sections, California Civil Codes, and State and Federal constitutional amendments." (*Id.*)

These allegations are conclusory and do not specify the specific claims or facts regarding those claims.  To the extent Plaintiff intended to assert state law claims, the Court finds that Plaintiff's allegations are insufficient to proceed on any such claims.

### V.     CONCLUSION AND RECOMMENDATIONS

The Court has screened First Amended Complaint (ECF No. 11) and finds that this action should proceed on the following claims:

1) Claim for deliberate indifference to serious medical needs and retaliation against Defendants Sergeant Villanueva and Alejandra Granados based on the allegations

19

that they removed a doctor's patch for pain and refused to implement doctor's orders to be provided a wheelchair after learning that Plaintiff intended to file a civil action against the institution.

2) Claim for deliberate indifference to serious medical needs and retaliation against Defendants Medina, Dr. Gustavian, Debbie based on the allegations that they disregarded a doctor's orders without cause and threatened Plaintiff that he would be denied any assistance if he "continued to complaint."

3) Claim of retaliation against Defendants Alejandra Granados, Sergeant Rivera, and Captain Gil based on the allegation that Granados told others about Plaintiff's intentions to sue the institution and they ordered Plaintiff moved into bed, from where he fell, suffering injuries and a seizure.

The Court finds that all other claims and defendants should be dismissed.

The Court will not recommend that further leave to amend be granted. In the Court's prior screening order (ECF No. 8), the Court identified deficiencies in Plaintiff's complaint, provided Plaintiff with relevant legal standards, and provided Plaintiff with an opportunity to amend his complaint. Plaintiff filed his First Amended Complaint with the benefit of the Court's screening order. Although Plaintiff cured some of the deficiencies identified by the Court, it appears that further leave to amend would be futile.

Based on the foregoing, **IT IS RECOMMENDED** that:

1. This case proceed on the following claims:

   a. Claim for deliberate indifference to serious medical needs and retaliation against Defendants Sergeant Villanueva and Alejandra Granados based on the allegation that they removed a doctor's patch for pain and refused to implement doctor's orders to be provided a wheelchair after learning that Plaintiff intended to file a civil action against the institution.

   b. Claim for deliberate indifference to serious medical needs and retaliation against Defendants Medina, Dr. Gustavian, Debbie based on the allegations that they disregarded a doctor's orders without cause and threatened

1   Plaintiff that he would be denied any assistance if he "continued to

2   complaint."

3       c.   Claim of retaliation against Defendants Alejandra Granados, Sergeant

4   Rivera, and Captain Gil based on the allegation that Granados told others

5   about Plaintiff's intentions to sue the institution and ordered Plaintiff

6   moved into bed, from where he fell, suffering injuries and a seizure.

7     2.  All other claims and Defendants be dismissed for failure to state a claim.

8   Specifically, Defendants County of Madera, Tyson Pogue, Wellpath, Sergeants

9   Khalea and Rivera, Corporals Alva and Gil, and Correctional Officers

10   Lawrence, Cortez, Benning, and Martinez be dismissed from this action.

11

12   IT IS SO ORDERED.

13     Dated:   __November 15, 2024__       /s/ Erica P. Grosjean

14                                       UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21